# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE D. AGOSTA,<br><br>             Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>             Defendant. | Case No. EDCV 11-476-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

## PROCEEDINGS

On April 11, 2011, Michele D. Agosta ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Social Security Disability Insurance benefits and Supplemental Security Income benefits. The Commissioner filed an Answer on June 3, 2013. On October 16, 2013, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be affirmed and this case dismissed with prejudice.

**BACKGROUND**

Plaintiff is a 48-year-old female who applied for Social Security Disability Insurance benefits on April 26, 2007 and Supplemental Security Income benefits on May 31, 2007. (AR 161.) The ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 6, 2004, the alleged onset date of her disability. (AR 26, 163.)

Plaintiff's claims were denied initially on March 28, 2008. (AR 161.) Plaintiff then sought review and on September 14, 2009, the matter proceeded to a hearing before Administrative Law Judge ("ALJ") Joel B. Martinez in Pasadena, California. (AR 161.) Claimant appeared and testified at the hearing and was represented by counsel. (AR 161.) Vocational expert ("VE") Gail L. Maron also appeared and testified at the hearing. (AR 161.)

The ALJ issued an unfavorable decision on November 4, 2009. (AR 161-170.) The Appeals Council denied review on January 7, 2011. (AR 171-173.)

Plaintiff then appealed the Commissioner's decision to this Court, which, on May 10, 2011, remanded the decision pursuant to the parties' stipulation to remand under sentence six of the Social Security Act. (AR 174-81.) On remand, the Court instructed the Commissioner to consider additional medical evidence that Plaintiff had timely submitted but that the Appeals Council did not consider prior to its declining her request to review the ALJ's November 4, 2009 decision. (AR 176-77.) In accordance with this Court's Order dated May 17, 2011 (AR 174-75), the Appeals Council vacated the decision and remanded the case to the Commissioner of Social Security for further proceedings consistent with the terms of the Stipulation to Remand.

A new hearing was held on March 6, 2012, before ALJ Mason D. Harrell, Jr., in San Bernardino, California. (AR 23.) Claimant appeared and testified at the hearing and was represented by counsel. (AR 23.) Vocational expert ("VE") Sandra M. Fioretti, also appeared and testified at the hearing. (AR 23.)

The ALJ issued an unfavorable decision on April 24, 2012. (AR 23-38.) The Appeals Council denied review on February 2, 2013. (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ erred in rejecting the functional capacity assessments of the treating physicians at Irwindale Industrial Clinic and treating general practitioner Davis, as well as partially rejecting the opinions of treating orthopedist Miller, treating psychiatrist Hutton, and consulting psychiatrist Kikani.

2. Whether the finding that Ms. Agosta's subjective testimony is not credible is supported by substantial evidence.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). Residual functional capacity ("RFC") is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four,

consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since October 6, 2004, the alleged onset date. (AR 26, 163.)

At step two, the ALJ determined that Plaintiff has the following severe impairments: bipolar disorder, status post broken left ankle, status post right carpal tunnel release; Hashimoto's thyroiditis, arthritis, degenerative disc disease of the lumbar spine and obesity. (AR 26.)

The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> Claimant can lift 20 pounds occasionally and 10 pounds frequently; she can perform standing and walking no more than two hours out of an eight-hour day at no more than 30 minutes at a time; sitting is without restrictions with normal breaks such as every two hours. She can frequently use the right dominant hand. Furthermore, she cannot interact with the public and only occasional work related interactions with coworkers and supervisors; she is limited to simple and routine tasks that do not require any physical quick actions or rapid decision-making or requirements for hypervigilence. She

may miss work once or twice a month and may be off task for up to 5 percent of the time.

(AR 28-36.) In determining the above RFC, the ALJ made an adverse credibility determination. (AR 29.)

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work as a cashier and tutor. (AR 36-37.) At step five, the ALJ alternatively found that considering Claimant's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including small products assembler and bench assembler. (AR 38.)

Consequently, the ALJ determined that Claimant is not disabled within the meaning of the Social Security Act. (AR 38.)

## DISCUSSION

The ALJ decision must be affirmed. The ALJ properly reviewed the medical evidence and properly discounted Plaintiff's credibility. The ALJ's RFC is supported by substantial evidence. The ALJ's nondisability determination is supported by substantial evidence and free of legal error.

**I.     THE ALJ PROPERLY CONSIDERED THE MEDICAL EVIDENCE**

Plaintiff contends the ALJ failed to give proper weight to various medical opinions. The Court disagrees.

**A.     Relevant Federal Law**

A RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms. See SSR 96-5p; 20 C.F.R. § 1527(e). In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. Robbins, 446 F.3d at 883.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**B.     Analysis**

Plaintiff contends that the ALJ erred in rejecting the RFC assessments of the physicians at Irwindale Industrial Clinic and treating general practitioner Davis, and partially rejecting the opinions of treating orthopedist Miller, treating psychiatrist Hutton and consulting psychiatrist Kikani. Each of these assessments are discussed below.

### 1. The Irwindale Industrial Clinic

Ms. Agosta apparently suffered a left hand injury in October of 2004. She alleges disability since October 6, 2004. (AR 23.) Treatment notes at Irwindale Industrial Clinic, however, do not indicate any disabling injury. An October 8, 2004 note returned Plaintiff to work with limited use of the left hand, right handed work only, no lifting with the left hand and she is to keep using a wrist brace. (AR 32, 518.) An October 12, 2004 note again returned Plaintiff to work and eliminated all of the above work restrictions except for the wrist brace. (AR 517.) An October 19, 2004 note provides the same assessment.

The ALJ gave the Irwindale Industrial Clinic assessments little weight because they were given early in Claimant's work injury and obviously could not account for subsequent injuries. (AR 32.) Indeed, other than her hearing testimony, Plaintiff cites to no medical evidence of any left wrist impairment after 2007. (JS at 16.)

All of the treatment notes returned Claimant to work and as such cannot be a basis for disability or even for any left wrist RFC limitations without consideration of subsequent medical evidence discussed below. Thus, any error by the ALJ in giving this evidence little weight would be harmless in any event. Carmickle v. Comm'r Soc. Sec. Adm., 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### 2.     Dr. Brent Miller

Plaintiff was evaluated several times in 2005, 2006 and 2007 by Dr. Brent Miller in connection with Plaintiff's workers' compensation claim. (AR 32.) The ALJ gave some but not full weight to Dr. Miller's findings and opinion (AR 32) but in any event Dr. Miller's RFC, even if fully credited, did not preclude alternative work and thus would not support disability.

The ALJ found that, after Plaintiff's initial left hand injury, the records indicated sparse, and ultimately no, complaints of left hand pain as time passed. (AR 32.) Plaintiff disputes this finding, relying largely on the basis of Dr. Miller's findings. His findings, however, either do not support any claim of continuing left hand impairment, pain or limitations, or his findings were rejected by the ALJ. (AR 32-33.)

On April 14, 2005, Dr. Miller diagnosed "[b]ilateral upper extremity overuse syndrome with component parts including bilateral carpal tunnel syndrome left greater than right, a left lateral epicondylitis, and left distal radiculnar pain." (AR 577.) He also found that Plaintiff had full and complete range of motion of both shoulders, elbows, wrists, and all digits. (AR 577.) On August 15, 2005, Dr. Miller reported that he had injected Plaintiff's left elbow which decreased her elbow pain and that the left side was "not nearly as bothersome . . . the patient has no real pain and her carpal tunnel syndrome symptoms are less with less pain and less numbness." (AR 570.) He concluded that Claimant's left lateral epicondylitis "has essentially resolved" and she continues to have bilateral carpal tunnel symptoms, "right significantly greater than the left." (AR 571.)

On January 23, 2006, Dr. Miller recounted that Claimant had "a successful cortisone injection for the left lateral epicondylitis" (AR 563) and the left elbow has "full and complete range of motion with only minimum palpable tenderness." (AR 564.) On March 6, 2006, Dr. Miller reported the Claimant complained of pain in her left lateral elbow which Dr. Miller characterized as "chronic left tennis elbow" but he also noted that Claimant had full and complete range of motion of both elbows, wrists and all digits. (AR 560-561.) There was no reference to any left wrist pain in these two reports. On February 1, 2007, however, he reported that nerve conduction studies had revealed a "moderately abnormal left median motor and sensory distal latency across the wrist." (AR 32, 551.)

Dr. Miller's final evaluation on February 1, 2007 recounted his initial April 2005 diagnosis of bilateral carpal tunnel left greater than right (AR 551) which subsequently had been modified to right greater than left. (AR 552.) He also included a diagnosis of left lateral epicondylitis. (AR 552.) Notwithstanding Plaintiff's complaint of left lateral elbow pain (AR 551), Dr. Miller

9

provided a RFC assessment that Plaintiff is able to lift 20 pounds occasionally and 10 pounds frequently, and stand/walk/sit for less than 8 hours. (AR 555.) Dr. Miller provided this RFC despite Plaintiff's right hand carpal tunnel impairment on which she had surgery. (AR 26, 32.) Dr. Miller also found a 5% total body impairment. (AR 553.) He concluded that Plaintiff was unable to return to her prior work as an IKEA cashier but as the ALJ correctly explains that is not the standard for disability for Social Security purposes. (AR 35-36.) Dr. Miller's essentially light work RFC would not preclude alternative work in the national economy and thus Plaintiff is not disabled due to her physical impairments, even if Dr. Miller's RFC is fully credited.

The ALJ's RFC includes Dr. Miller's lift and carry opinion but imposed much more restrictive sit/stand/walk assessments than Dr. Miller did. (AR 28, 32.) He also rejected Dr. Miller's bilateral hand restrictions because they were not fully supported by the medical evidence. (AR 32.) The medical evidence would include Dr. Miller's own assessments in 2005 and 2006. (AR 561, 557.) The ALJ further noted that Dr. Miller's 2007 opinion was over five years old by the time of the decision and by then "the records indicate that the Claimant has undergone physical therapy and she made improvements with this in her overall pain and range of motion." (AR 32-33.) The ALJ also found that Claimant had not obtained any additional treatment for her bilateral hands after 2007. (AR 33.) Plaintiff offers no medical evidence of further treatment after 2007 of her left hand, left elbow or right hand.

These are specific and legitimate reasons supported by substantial evidence for partially rejecting Dr. Miller's opinions. Plaintiff disputes the ALJ's treatment of Dr. Miller's opinions but it is the ALJ who has the responsibility for resolving conflicts in the medical evidence. Andrews, 53 F.3d at 1039. Where the ALJ's interpretation of the evidence is reasonable as it is here, it should not be second-guessed. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Even more dispositively, even if Dr. Miller's opinions were fully credited, his light work RFC does not preclude alternative work and thus Plaintiff would not be found disabled. Any error by the ALJ in discounting Dr. Miller's opinions, then, would be harmless. Carmickle, 533 F.3d at 1162-63.

### 3. Dr. Steven Davis

In December 2007, Plaintiff suffered a fractured fibula. (AR 30.) On December 26, 2007, she underwent a left ankle open reduction and internal fixation of the left distal fibula. (AR 30.) By July 23, 2008, Claimant was assessed with "a healed fibular fracture on the left and told to attend physical therapy." (AR 30.)

On June 30, 2008, Claimant's treating general practitioner Dr. Steven Davis completed a form for the San Bernardino County Transitional Assistance Department stating Claimant had "status post open reduction of the left lower leg, improving" but was still "unable to keep scheduled work." (AR 33, 685.) He found Plaintiff to be temporarily incapacitated from July 1, 2008 to January 1, 2009. The ALJ gave this opinion little weight for several reasons. (AR 33.) Dr. Davis was addressing Plaintiff's inability to return to her then work which as already noted does not necessarily preclude alternative work which was not addressed by Dr. Davis. (AR 35-36.) The ALJ found that the record indicates Claimant did have some temporary issues with her ankle but there were no complications with the healing fracture. (AR 33.) Plaintiff cites to no medical evidence after 2009 of any such complications with the fracture that would result in prolonged disability. Indeed, the ALJ noted Plaintiff had attempted work in this period. (AR 33, 36, 70-73, 118-120.) The ALJ reasonably concluded that the objective evidence is consistent with a determination that Plaintiff could do alternative work with the limitations established in the ALJ's RFC. (AR 36.) Plaintiff argues that the ALJ overstated or mischaracterized Dr. Davis' limitations but even so Dr. Davis' opinion about Plaintiff's temporary inability to return to her past work obviously does not establish disability. Any such mistaken remarks are harmless error. Carmickle, 533 F.3d at 1162-63.

The ALJ properly discounted the opinions of the Irwindale Industrial Clinic, Dr. Miller and Dr. Davis for specific, legitimate reasons supported by substantial evidence. The ALJ properly considered the physical impairment medical evidence in determining Plaintiff's RFC.

### 4. Mental Impairment Medical Evidence

The ALJ found that Plaintiff has the medically determinable severe impairment of bipolar disorder (AR 26) but also found that this mental impairment does not meet the criteria of any

11

Listing. (AR 27.) The ALJ accommodated Plaintiff's mental impairment in his RFC by limiting Plaintiff to no public interaction, simple routine tasks and noting Plaintiff may miss work once or twice a month and may be off task for up to 5 percent of the time. (AR 28.) The ALJ's mental RFC limitations do not preclude alternate work in the national economy. (AR 37.)

The ALJ gave "some but not full weight" to the June 27, 2008 opinion of workers' compensation treating psychiatrist Dr. Todd Hutton. (AR 33-34, 584-604.) He assessed Plaintiff with bipolar disorder and noted Plaintiff believes she has ADHD and resists medication for bipolar disorder. (AR 33.) Dr. Hutton opined that Claimant "would not be able to handle a very demanding job." (AR 33, 592.) He assessed moderate impairment in the ability to comprehend and follow instructions to severe impairments in the ability to perform simple and repetitive tasks, maintain an appropriate work pace, relate to other people and in other workplace functions. (AR 33, 593-594.)

The ALJ included in his RFC some of Dr. Hutton's limitations but gave less than full weight to Dr. Hutton's opinion because his treatment notes reveal "benign findings." (AR 34.) An ALJ may discount a treating physician's opinion that conflicts with the physician's treatment notes. Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). The ALJ, however, does not cite to any treatment notes and neither does the Commissioner. This reason for discounting Dr. Hutton's opinion is not supported by substantial evidence. More compelling is the ALJ's finding that Dr. Hutton's evaluation occurred five years before the ALJ decision and the records reveal sparse treatment after 2007. (AR 34.) Duration of treatment, and frequency and nature of contact, are proper factors relevant in weighing a physician's opinion. 20 C.F.R. § 505.1527(c)(2)(i); Orn, 495, F.3d at 633. Plaintiff challenges the ALJ's finding of sparse treatment after 2007 but cites only treatment notes indicating prescriptions and descriptions of her behavior but no RFC assessments or aggressive treatment regimens.

The ALJ also gave less weight to the March 11, 2008 opinion of Dr. Divy Kikani who diagnosed Plaintiff with mood disorder and opined she was "currently unable to function and work in a formal capacity." (AR 34, 531.) Yet, as the ALJ notes, Dr. Kikani's report is marred by inconsistencies. (AR 34.) An ALJ may disregard a treating physician's opinion when it is

12

internally inconsistent. <u>Bayliss</u>, 427 F.3d at 1216; <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1433 (9th Cir. 1995). Dr. Kikani found but mild to moderate impairments in functioning which the ALJ characterized as "essentially unremarkable." (AR 34.) The ALJ also noted the inconsistency between Dr. Kikani's opinion that Claimant was only "moderately psychiatrically impaired" and his opinion that Claimant is unable to work. (AR 34-35.) Plaintiff disputes the ALJ's interpretation of Dr. Kikani's opinion but again it is the ALJ who has the responsibility for resolving conflicts in the medical evidence. <u>Andrews</u>, 53 F.3d at 1039. Where the ALJ's interpretation of the evidence is reasonable as it is here, it should not be second-guessed. <u>Rollins</u>, 261 F.3d at 857.

The ALJ gave significant weight to the March 25, 2008 opinion of State Agency reviewing psychiatrist, Dr. Raffi Tashjian. (AR 35, 533-547.) Dr. Tashjian, who had the benefit of reviewing all the psychiatric records, found Plaintiff had mild to moderate limitations in functioning and was limited to simple, repetitive tasks with limited social contact. (AR 35.) The ALJ, however, adopted a more restrictive RFC than Dr. Tashjian's RFC to account for Plaintiff's subjective complaints. (AR 35.) Plaintiff did not address Dr. Tashjian's findings.

The ALJ discounted the opinions of Dr. Hutton and Dr. Kikani for specific, legitimate reasons supported by substantial evidence. The ALJ properly considered the mental impairment medical evidence in determining Plaintiff's RFC.

## II. THE ALJ PROPERLY DISCOUNTED PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff contends that the ALJ improperly discounted Plaintiff's credibility. The Court disagrees.

### A. Relevant Federal Law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir. 1991); <u>see</u> <u>also</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998); <u>Smolen</u>, 80 F.3d at 1281-82 esp. n.2. The Commissioner may not discredit a claimant's testimony on the

severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958; see also Rollins, 261 F.3d at 856-57; Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

**B.     Analysis**

In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments could be expected to cause some of her alleged symptoms. (AR 29.) The ALJ, however, found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were not credible to the extent inconsistent with the ALJ's assessed RFC. (AR 29.) Because the ALJ did not make a finding of malingering, he was required to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's credibility. Smolen, 80 F.3d at 1283-84. The ALJ did so.

The ALJ discounted Plaintiff's subjective symptoms because they are inconsistent with, and greater than expected in light of, the objective medical evidence, as discussed above. (AR 29.) An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's alleged pain symptoms so long as it is not the only reason for discounting a claimant's credibility. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Thomas, 278 F.3d at 989. Here, the Court already has found that the ALJ properly considered the physical and mental medical evidence and that the RFC is supported by substantial evidence. The ALJ's RFC does not preclude alternative work in the national economy.

Conservative treatment is also a valid basis for discounting a claimant's testimony. Parra, 481 F.3d at 750-51. The ALJ found that Claimant's treatment of her physical maladies has been routine and conservative in nature since her surgery for carpal tunnel syndrome, and the evidence also indicates infrequent trips to the doctor for Claimant's mental impairments. (AR 29.) The ALJ thoroughly discussed Plaintiff's treatment for physical and mental impairments documenting that in recent years Plaintiff has seen improvement and been treated successfully with medications. (AR 30-32); Warre v. Comm'r Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). The ALJ further found that a lack of more aggressive treatment suggests that Claimant's symptoms and limitations were not as severe as alleged. (AR 29.)

The ALJ further observed that the record indicates non-compliance with Claimant's recommended treatment which demonstrates a possible unwillingness to do what is necessary to improve her condition or an indication that her symptoms are not as severe as alleged. (AR 29.) A claimant's failure to follow a prescribed course of treatment can be a valid basis for discounting credibility. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). As already noted, Dr. Hutton reported Plaintiff was intensely resistant to medications for bipolar disorder and opined she would not be compliant with prescribed treatment. (AR 33-34.) She refused to discuss her depression (AR 29, 31) and also did not take her blood pressure medications. (AR 30.)

The ALJ also found that Plaintiff's alleged subjective symptoms were inconsistent with her daily activities (AR 29), which is a legitimate reason for discounting credibility. Bunnell, 947 F.2d at 345-46. The ALJ found that Claimant admitted activities that include caring for her friend's property, yard work, taking out the trash, performing personal grooming and that she was able to write and eat with her right hand. (AR 29.) She also attempted work in 2007, 2009 and 2010. (AR 26, 28.) Plaintiff contends that these activities are not sufficient evidence that she can work but even so they suggest the alleged severity of her limitations was exaggerated. See Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff disputes the ALJ's interpretation of the evidence regarding Plaintiff's credibility but again the ALJ is the one responsible for resolving ambiguities in the record. <u>Andrews</u>, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. <u>Rollins</u>, 261 F.3d at 857.

The ALJ discounted Plaintiff's subjective symptoms for clear and convincing reasons supported by substantial evidence.

\* \* \*

The ALJ's RFC is supported by substantial evidence. The ALJ's nondisability determination is supported by substantial evidence.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this case with prejudice.

DATED:  December 11, 2013               */s/ John E. McDermott*
                                                  JOHN E. MCDERMOTT
                                        UNITED STATES MAGISTRATE JUDGE